UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Robert Pavlakos

          v.                              Civil No. 14-cv-442-JD
                                          Opinion No. 2015 DNH 052
Carolyn Colvin, Acting Commissioner
Social Security Administration


O R D E R


     Robert Pavlakos seeks judicial review, pursuant to 42 U.S.C.
§ 405(g), of the decision of the Acting Commissioner of the
Social Security Administration, denying his application for
social security disability benefits and supplemental security
income.  Pavlakos moves to reverse and remand the decision,
contending that the Administrative Law Judge ("ALJ") erred in
finding that Pavlakos has the residual functional capacity to
perform past relevant work.  The Acting Commissioner moves to
affirm the decision.


Standard of Review

     In reviewing the final decision of the Acting Commissioner
in a social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found

facts upon the proper quantum of evidence." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999); <u>accord</u> <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev.</u>, 620 F.3d 62, 66 (1st Cir. 2010).  Substantial evidence, however, "does not approach the preponderance-of-the-evidence standard normally found in civil cases." <u>Truczinskas v. Dir., Office of Workers' Compensation Programs</u>, 699 F.3d 672, 677 (1st Cir. 2012).

<u>Background</u>

The background information is summarized from the parties' joint statement of material facts.

The record shows that Pavlakos has received treatment for mental health issues since 1993 when he was in his twenties. More recently, Pavlakos was diagnosed and treated for depression, PTSD, and bipolar disorder.  At the time of the hearing, Pavlakos had been working part time, one hour a day for three days a week, through a supported work program in which he was a member of a six to eight member cleaning crew with two supervisors.

2

Previously, he had done maintenance work at an apartment complex, worked as a manager of a storage facility, and worked as a preparation cook at a hospital.  He is now forty-six years old.

In 2006, Pavlakos was diagnosed with bipolar disorder, and he began treatment at Northern Human Services in 2009.  Dr. Stacey Charron, a psychiatrist at Northern Human Services, performed a psychiatric evaluation of Pavlavkos in April of 2009 for a prior social security application.  Pavlakos was alert and oriented and his insight and judgment were fair.  Dr. Charron noted that Pavlakos had been off of medication for a year, that he was struggling with mood swings, and that his nightmares, flashbacks, and "cues of trauma" were likely caused by PTSD.  She prescribed Lithium, required a recheck on medication levels in a month, and recommended continued outpatient treatment.

Elizabeth Hess, Ph.D., completed a psychiatric evaluation of Pavlakos for New Hampshire Medicaid Administration Services at the end of April, 2009.  Dr. Hess found that Pavlakos had "marked latency retrieving information from memory," disrupted attention and concentration, marked functional loss in daily activities, marked functional loss in social interaction, marked functional loss in work-related task performance, and could not concentrate or persist on tasks.  Dr. Hess also found that Pavlakos had

trouble with complexity, lost track of his schedule, had
grandiose thinking, and would quit jobs impulsively.  She
recommended that Pavlakos continue psychotherapy and medication.

Pavlakos received biweekly therapy sessions with Matt
Buteau, MS, at Northern Human Services.   Northern Human Services
also provides other support services to Pavlakos, including a
case manager, supported part-time employment, and functional
support.

Pavlakos applied for benefits in July of 2011.[1]  As part of
the application process, Jane V. Buerger, Ph.D., completed a
Psychiatric Review Technique on February 22, 2012, for the period
from October 7, 2010, through December 31, 2011.  Dr. Buerger
found that Pavlakos had medically determinable impairments of
Bipolar II Disorder and anxiety, but she concluded that the
impairments were not severe and caused only mild functional
limitations.

After his application for benefits was denied, Pavlakos
requested a hearing that was held in April of 2013.  Pavlakos had
a non-attorney representative who appeared by video for the

---

[1] Pavlakos had previously applied for benefits, but his
applications were denied.

4

hearing, and a vocational expert testified by telephone at the
hearing.  On April 22, 2014, the ALJ issued a decision in which
he found that Pavlakos was not disabled.  The Appeals Council
denied Pavlakos's request for review.

## Discussion

In support of his motion to reverse and remand, Pavlakos
argues that the ALJ erred in finding that he has the residual
functional capacity to do full-time work because the record lacks
expert opinion on that issue and does not support that
assessment.  Pavlakos also argues that the ALJ erred in finding
that he could do past relevant work as a rental store clerk when
he has never done that work.  The Acting Commissioner contends
that the ALJ properly assessed Pavlakos's residual functional
capacity, which is based on substantial evidence, and that the
error in the job description does not require reversal.

Disability, for purposes of social security benefits, is
"the inability to do any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12

months."  20 C.F.R. § 404.1505(a).[2]  The ALJ follows a five-step

sequential analysis for determining whether a claimant is

disabled.  20 C.F.R. § 404.1520.  The claimant bears the burden

through the first four steps of proving that his impairments

preclude him from working.  Freeman v. Barnhart, 274 F.3d 606,

608 (1st Cir. 2001).  The Commissioner bears the burden at step

five to show that other work exists that the claimant can do.

Seavey, 276 F.3d at 5.

A.  Residual Functional Capacity

    The ALJ's residual functional capacity assessment determines

the most a person can do in a work setting despite his

limitations caused by impairments.  20 C.F.R. § 404.1545(a)(1).

A residual functional capacity assessment will be affirmed if it

is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of

Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa

v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

---

    [2] The Social Security Administration promulgated regulations
governing eligibility for disability insurance benefits at Part
404 and for supplemental security income at Part 416.  Because
the regulations are substantially the same, the court will cite
only to the Part 404 regulations.  See McDonald v. Sec'y of
Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

In this case, the ALJ found that Pavlakos had severe impairments due to degenerative disc disease, bipolar disorder, depressive disorder, and PTSD. Despite those impairments, the ALJ found that Pavlakos had the residual functional capacity to perform light work with some restrictions. The ALJ found that Pavlakos could do only simple and unskilled work and could maintain concentration for two-hour periods during an eight-hour work day and forty-hour work week. Based on that assessment and the vocational expert's opinion, the ALJ found that Pavlakos could do his past work as a rental store clerk.

Pavlakos argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence because the record does not include a mental functional capacity assessment by an expert that supports the ALJ's assessment. Without a supporting opinion, Pavlakos contends, the ALJ's assessment is based on his own interpretation of raw medical data in the record, which is not permitted. The Acting Commissioner argues that the ALJ properly assessed Pavlakos's residual functional capacity based on the medical record that showed only mild impairment.

The ALJ gave little weight to the opinions provided by Dr. Charron and Dr. Hess because he concluded that the

contemporaneous treatment notes did not support the serious functional limitations found in those opinions.  As to Dr. Buerger's opinion, the ALJ said that he gave her opinion "some weight" but also stated that Dr. Buerger's finding of no severe impairment was not consistent with the record evidence. Therefore, it is not clear what part of Dr. Buerger's opinion the ALJ credited.  As a result, it appears that the ALJ did not rely on any expert opinion to support his residual functional capacity assessment.

Ordinarily, an ALJ must have an expert's residual functional capacity assessment to interpret a claimant's symptoms and impairments in terms of functional loss and job performance. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  An expert's opinion is necessary because "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record."  Manso-Pizarro, 76 F.3d at 17. If, however, the record shows little impairment, "an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment."  Id.

The Acting Commissioner argues that the ALJ properly made a commonsense evaluation of Pavlakos's functional capacity without

an expert's opinion.  In support, the Acting Commissioner notes that Pavlakos's symptoms were under "fair control" with medication.  Pavlakos highlights records that show his mood swings, depression, grandiose thoughts, difficulty with sleep, and many other symptoms.  Given the apparent severity of Pavlakos's diagnoses and symptoms, this is not a record of little impairment that can be interpreted through a lay person's commonsense.  Therefore, in the absence of expert opinion, the ALJ's residual functional capacity assessment is not supported by substantial evidence.

B.  Past Work

At step four, the ALJ found, relying on the vocational expert's testimony, that Pavlakos could return to his past work as a "rental store clerk."  The Acting Commissioner concedes that the ALJ misstated Pavlakos's past work but contends that the mistake was a mere scrivener's error.  Because the mistake can be addressed on remand, if necessary, the issue need not be resolved here.

Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand (document no. 7) is granted.  The Acting Commissioner's motion to affirm (document no. 8) is denied.

The case is remanded pursuant to sentence four of § 405(g).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 12, 2015

cc:  Ruth Dorothea Heintz, Esq.
     Michael T. McCormack, Esq.